RECEIVED
4/27/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

20CV2549
JUDGE THARP JR.
MAGISTRATE JUDGE FINNEGAN

ANDY HOPE WILLIAMS JR.;

Plaintiff

v.

THE CITY OF AURORA, AURORA POLICE DEPARTMENT; KRISTEN ZIMAN; OFFICER BADGE #390; OFFICER BADGE #392; OFFICER JOHN DOE 1; OFFICER JOHN DOE 2, in their individual capacities

Defendants.

**JURY TRAIL DEMANDED**

**INTRODUCTION**

1. Our nation's founding doctrines provide a bulwark against violations of official power, including abuses by law enforcement. The Constitution and federal and state laws prevent police officers from exploiting their positions of authority to subject individuals to unwarranted discrimination of race, color, or natural origin. The City of Aurora engaged and continues to engage in a pattern or practice of performing vehicle stops which violate the longstanding canons of fairness and equality based on the founding doctrines. Acting through the Aurora Police Department ("APD"), the City of Aurora promotes a culture of racial profiling and discrimination, especially against people of color like the Plaintiff.

2. Defendant Officers without probable or legal justification racially profiled the Plaintiff by following the vehicle he was driving for three blocks. Defendant Officers then stopped the vehicle Plaintiff was driving and four Officers unlawfully detained Plaintiff and after one hour issued two tickets for allegedly failing to signal 100 feet before turning and disobeying a stop sign.

3. The APD's pattern of these violations against people of color is well-documented. The American Civil Liberties Union detailed in a report called Illinois Traffic Stop Statistical Study Act of 2003, traffic stops data in Aurora, Illinois for African American and Latino motorists were far more likely to be asked for consent to search their vehicle – 2.36 times and 1.63 times more, respectively. Yet white motorists who were consent searched were far more likely to have contraband than African Americans (30% more) and Latinos (46% more). (racial profiling)

4. Plaintiff brings the suit to bring a stop to these discriminatory practices and to receive damages for the unlawful practices of the employees of the City of Aurora and Aurora Police Department Special Operations Group ("SOG")

**PARTIES**

5. Plaintiff Andy Hope Williams Jr., is a man of Indigenous Origin, occupying land in Illinois that was stolen from his ancestors.

6 Defendant CITY OF AURORA is a municipal corporation under the laws of the City of Aurora, located in the Northern District of Illinois. It is authorized under the laws of the State of Illinois to maintain the AURORA POLICE DEPARTMENT ("APD"), which acts as the City's agent in the area of municipal law enforcement, and for which the City is ultimately responsible.

7. Defendant CITY OF AURORA was, at all times material to this Complaint, the employer and principal of the Defendant Officers described below.

8. Police Officers BADGE (#390), BADGE (#392), JOHN DOE #1, JOHN DOE #2, and KRISTEN ZIMAN who are City of Aurora employees with the APD. Each is sued in his or

her individual capacity for violating the individual constitutional and human rights of the named Plaintiff. They are referred to collectively herein as the "Defendant Officers."

9. At all times material to this Complaint, the Defendant Officers acted under color of state law as police officers of the City of Aurora, and acted in the course and within the scope of their employment.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367.

11. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2),

**STATEMENT OF FACTS**

12. On August 27, 2019, Plaintiff was driving on High Street in Aurora, Illinois.

13. Plaintiff was on the phone with his Queen when a Ford Expedition started following him for three blocks.

14. At or around 3:40 p.m., the Ford Expedition started flashing lights behind the vehicle Plaintiff was driving.

15. Plaintiff pulled over and four undercover Officers exited the Ford Expedition and approached the 2015 Chevy Equinox Plaintiff was driving.

16. One Officer approached the driver's side of the vehicle while the other three approached the passenger side of the vehicle.

17. Plaintiff was uncomfortable as the Officers approached the vehicle.

18. Plaintiff rolled down the driver's side window and the Officer asked the Plaintiff do you know why he pulled him over.

19. Plaintiff said no.

20. The Officer asked Plaintiff for his driver's license and insurance.

21. The Officer then asked Plaintiff where he was going and where he was coming from.

22. Plaintiff told the police Officer that he was committing no crime and did not have to tell the Officer anything as he handed him his license.

23. The officer who took Plaintiff's license said since Plaintiff failed to signal 100 feet before making a turn, and disobeyed a stop sign and it appeared he was coming from a known gang drug house.

24. Plaintiff shrugged his shoulders and said that was a bunch of crap because the Officers were not at the stop sign to see if Plaintiff failed to signal 100 feet, and Plaintiff asked the Officer what is a gang house.

25. Three of the Officers went back to the vehicle while the officer with sunglasses stared at the Plaintiff from the right passenger corner of the vehicle.

26. The Plaintiff rolled down the passenger side window and asked the officer with the sunglasses why he was staring at him.

27. The officer leaned in the window and rested his arms and body on the window frame.

28. Plaintiff asked the officer with the sunglasses to please get off the window.

29. The Officer with the sunglasses did not move and the Plaintiff yelled at the officer to get off his window.

30. The officer that Plaintiff had given his license too came back and asked what was going on.

31. Plaintiff explained the officer with the sunglasses needed to get off his window.

32. The Officer told Plaintiff the officer was there for their safety because many officers are killed during routine traffic stops and offered statistics.

33. Plaintiff in fear for his own safety, again asked that the officer remove himself from the window.

34. The Officer with the sunglasses stayed on the passenger window leaning for approximately twenty-four minutes.

35. Plaintiff asked the officer who had taken his license that he was ready to drive off as he had been detained for over thirty minutes.

36. The officer began yelling at Plaintiff and stated that he was not free to go anywhere because he was the police and had authority over Plaintiff.

37. Plaintiff became very agitated and called his Queen at 4:49 to let her know that he loved her and was unsure of the outcome of the traffic stop.

38. Plaintiff's Queen pleaded with him to remain calm and encouraged him that she loved him and wanted him to come home.

39. At or around 4:57, the Officer gave the Plaintiff two tickets and said it was because Plaintiff was uncooperative.

40. During the one-hour incident, two of the officers remained at the Ford Expedition.

41. Plaintiff proceeded to the Aurora Police Department to talk to the Sergeant on duty and file a complaint.

42. The Sergeant on duty was Officer Tate and he came out to speak with the Plaintiff.

43. Plaintiff explained the events of what happened to which Sergeant Tate admitted there was surveillance in the neighborhood and there was a known gang houses in the area.

44. Sergeant Tate stated the tickets were punitive, but there was nothing he can do.

45. Plaintiff gave Sergeant Tate his business card and asked if they could set up a meeting to have a dialogue about better policing in the community.

46. Sergeant Tate never called.

47. On August 28, 2019, Plaintiff sent a text to Mayor Richard Irvin explaining the incident and asked if the City of Aurora would be interested in an implicit bias training and if the City had a plan in place for the oppressed people.

48. The Mayor did not respond.

49. Plaintiff then posted the incident on Facebook and several people from Aurora shared the exact same story that happened to Plaintiff had happened to them.

**Count I -42 U.S.C. § 1983**
**Unlawful Seizure-Fourth Amendment**
**Defendant Police Officers and City of Aurora**

50. Paragraphs 1 through 49 are incorporated as though fully stated herein.

51. At all times relevant to this claim, the officers were acting under color of state law in their capacities as Aurora law enforcement officers.

52. Plaintiff had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure through false arrest.

53. Any reasonable law enforcement officer knew or should have known of this clearly established right.

54. The Aurora officers intentionally, knowingly, recklessly, and excessively subdued, restrained, detained, and falsely apprehended Plaintiff without any reasonable justification or probable cause.

55. The Aurora officers forcibly seized Plaintiff's body and forcibly and intentionally restrained Plaintiff against his will, despite lacking any legally valid basis to do so.

56. The Aurora officers did not at any time have probable cause, reasonable suspicion, or any other legally valid basis to believe that Plaintiff committed or was committing any violation of the law prior to seizing and continuing to restrain him.

57. The Aurora officers did not at any time have a warrant authorizing such seizure of Plaintiff's body

58. The Aurora officers' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Plaintiff's federally protected and unalienable rights.

59. The Aurora officers engaged in the acts and omissions described herein pursuant to the custom, policy, and practice of City of Aurora and the Aurora Police Department which encourages, condones, tolerates, and ratifies false arrests, unlawful seizures, and deprivation of constitutionally protected interests by law enforcement officers.

60. The acts or omissions of Defendant, including the unconstitutional policy, procedure, custom, and/or practice described herein, were the legal and proximate cause of Plaintiff's damages.

61. As a direct result of Defendant's unlawful actions as described above, Plaintiff suffered and continues to suffer actual physical harm, embarrassment, humiliation, emotional and economic injuries in an amount to be proven at trial.

WHEREFORE, ANDY HOPE WILLIAMS JR., seeks for judgment against Defendant, CITY OF AURORA, awarding compensatory damages and punitive damages in an amount in

excess of seventy-five thousand dollars ($75,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**Count II- Violation of 42 U.S.C. § 1983**
**False Arrest Fourth Amendment**
**Defendant Police Officers and City of Aurora**

62. Paragraphs 1 through 61 are incorporated as though fully stated herein.

63. The actions of the Defendants described herein constituted a false arrest, without legal cause, in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983.

64. The actions by the Defendants in falsely detaining, arresting, and imprisoning Plaintiff without reasonable suspicion or probable cause violated Plaintiffs' Fourth Amendment rights to be free from unreasonable search and seizure, pursuant to 42 U.S.C. § 1983.

65. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff's clearly established constitutional rights.

66. The actions of the Defendants were the direct and proximate cause of the violations of Plaintiff's Fourth Amendment rights, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

WHEREFORE, ANDY HOPE WILLIAMS JR., seeks for judgment against Defendant, CITY OF AURORA, awarding compensatory damages and punitive damages in an amount in excess of seventy-five thousand dollars ($75,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**Count III- Violation of 42 U.S.C. § 1983**
**Denial of Equal Protection Fourteenth Amendment**
**Defendant Police Officers and City of Aurora**

67. Paragraphs 1 through 66 are incorporated as though fully stated herein.

68. The Fourteenth Amendment to the United States Constitution, enforceable under 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

69. Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on color is presumptively unconstitutional and subject to heightened scrutiny.

70. Stopping Plaintiff based on the color of his skin discriminates against him because people of other skin color are not stopped when they drive through certain neighborhoods.

71. The Defendants treat people of color different than white citizens who drive through certain neighborhoods.

72. The Defendants discrimination against Plaintiff based on his skin color is not substantially related to any important government interest. Indeed, it is not even rationally related to any legitimate government interest other than to discriminate.

73. The discrimination against Plaintiff based on his skin color denies him the equal protection of the laws, in violation of the Equal Protection Clause of the Fourteenth Amendment.

74. People of color have suffered a long history of extreme discrimination in Aurora and across the country when it comes to the police and their Special Operation Groups and Gang Task Forces, and continue to suffer such discrimination to this day.

75. People of color and oppressed people are a discrete and insular group and have yet gained the political power to protect their rights through the legislative process. They have largely been unable to secure explicit local, state, and federal protections to protect them against discrimination.

76. A person's skin color bears no relation to a person's ability to contribute to society.

77. The actions of the Defendants were the direct and proximate cause of the violations of Plaintiff's Fourth Amendment rights, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

WHEREFORE, ANDY HOPE WILLIAMS JR., seeks for judgment against Defendant, CITY OF AURORA, awarding compensatory damages and punitive damages in an amount in excess of seventy-five thousand dollars ($75,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**Count IV- Violation of 42 U.S.C. § 1983**
**Conspiracy to Deprive Plaintiff of his Constitutional Rights**
**Defendant Police Officers and City of Aurora**

78. Paragraphs 1 through 77 are incorporated as though fully stated herein.

79. Each of the Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

80. Each of the Defendants took concrete steps to enter into an agreement to unlawfully use force on, detain, and arrest the Plaintiff, knowing they lacked probable cause to do so, and for the purpose of violating Plaintiff's Fourth and Fourteenth Amendment rights.

81. In furtherance of this conspiracy, each of the Defendants committed specific overt acts, misusing their police powers for the purpose of violating Plaintiff's rights. They accomplished this goal by fabricating evidence against the Plaintiff, and approving bogus tickets which resulted in Plaintiff having to go to court and defend himself.

82. Each individual Defendant is therefore liable for the violation of Plaintiff's rights by any other individual Defendant.

83. As a direct and proximate result of the Defendants' conspiracy, Plaintiff

suffered damages, including pain, suffering mental distress, anguish, humiliation, loss of income, and legal expenses, as set forth more fully above.

WHEREFORE, ANDY HOPE WILLIAMS JR., seeks for judgment against Defendant, CITY OF AURORA, awarding compensatory damages and punitive damages in an amount in excess of seventy-five thousand dollars ($75,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**Count V- Violation of 42 U.S.C. § 1983**
**Failure to Intervene**
**Defendant Police Officers**

84. Paragraphs 1 through 83 are incorporated as though fully stated herein.

85. During the events described above, the individual Defendant Officers stood by without intervening to prevent the violation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments, even though they had the opportunity and duty to do so.

86. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff's clearly established constitutional rights.

87. As a direct and proximate result of the Defendants' failure to intervene, Plaintiff suffered damages, including, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

WHEREFORE, ANDY HOPE WILLIAMS JR., seeks for judgment against Defendant, CITY OF AURORA, awarding compensatory damages and punitive damages in an amount in excess of seventy-five thousand dollars ($75,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**Count VI- Violation of 42 U.S.C. § 2000d et seq.**
**National Origin and Color Discrimination under Title VI**
**Against City of Aurora**

88. Paragraphs 1 through 87 are incorporated as though fully stated herein.

89. City of Aurora, a recipient of federal funds, intentionally discriminated against Plaintiff on the basis of his race, color, or ethnicity in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., by the discriminatory manner in which they ambushed Plaintiff without cause, violating his constitutional freedoms, and discriminating against Plaintiff. Defendant's discriminatory actions excluded Plaintiffs from the right to freedom and liberty which Plaintiff had a right to do.

90. Title VI, 42 U.S.C. § 2000d, specifically states:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

91. The City of Aurora's actions against Plaintiff violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, a violation of Title VI, when committed by a municipality like the City of Aurora that accepts federal funds.

92. Plaintiff has been and fears that he will continue to be injured by the City of Aurora because the City of Aurora has and will continue to deny him equal constitutional freedoms with other residents in the Aurora community on the basis of race, color and ethnicity due to the City of Aurora's intentionally discriminatory policies and procedures, unless the relief below, and possibly other actions, are enacted.

WHEREFORE, ANDY HOPE WILLIAMS JR., seeks for judgment against Defendant, CITY OF AURORA, awarding compensatory damages and punitive damages in an amount in

excess of seventy-five thousand dollars ($75,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**Count VII- Violation of 42 U.S.C. § 1983**
**Failure to Train and Supervise**
**Against Kristen Ziman**

93. Paragraphs 1 through 92 are incorporated as though fully stated herein.

94. Kristen Ziman, as Chief of Police of the Aurora Police Department, maintains the officers' policies and procedures for Aurora Police Department, but Kristen Ziman failed to properly train, supervise, and discipline its officers that ambushed Plaintiff with respect to the unlawful seizure, false arrests, just enforcement of laws, and equal protection of the laws.

95. The harm to Plaintiff by the Aurora Police Departments violations of Plaintiff's constitutional rights were foreseeable and a consequence of the Aurora Police Departments failure to properly train and supervise the Aurora Police officers, making Aurora Police Department deliberately indifferent to the constitutional rights of Plaintiff by failing to properly train, monitor, supervise, and discipline its employees with respect to the use of unlawful seizures and false arrests.

96. The Aurora Police Department could have and should have pursued reasonable methods of training, monitoring, supervising, and disciplining its employees and because of its failure to do so, Plaintiff has suffered and continue to suffer damages to be proven at trial.

WHEREFORE, ANDY HOPE WILLIAMS JR., seeks for judgment against Defendant, CITY OF AURORA, awarding compensatory damages and punitive damages in an amount in excess of seventy-five thousand dollars ($75,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**COUNT VIII – Violation of 42 U.S.C. § 1981**
**Ratification**
**Against Defendant City of Aurora**

97. Paragraphs 1 through 96 are incorporated as though fully stated herein.

98. At all relevant times, Plaintiff had a constitutional right to be free from discrimination, unlawful seizure and arrest under the Fourth Amendment to the United States Constitution, incorporated to apply to the states through the Fourteenth Amendment to the United States Constitution.

99. Plaintiff's constitutional right to be free from discrimination, unlawful seizure and arrest was violated on August 27, 2019 when he was stopped by the SOG.

100. Plaintiff's constitutional right to be free from discrimination, unlawful seizure was violated by Defendant Officers, who are Aurora police officers acting under color of state law.

101. Upon information and belief, a final policy maker, such as the Aurora City Council, Chief of Police Ziman and/or Aurora Mayor Richard Irvin, acting under color of law, who had final policymaking authority and disciplinary authority concerning the acts of Defendant officers, ratified Defendant officer's acts preceding the Plaintiff's incident and the bases of them.

102. Upon information and belief, the final policymaker knew of and specifically approved of Defendant officer's acts preceding the Plaintiff's incident, which permitted Defendant officers to remain in their position to permit such acts described above.

103. Upon information and belief, a final policy maker has determined that the acts of Defendant officers were "within policy," which permitted Defendant officers to remain in in their position to permit such acts described above.

104. As a direct and proximate result of the above acts and/or omissions of the City of Aurora Plaintiff was unlawfully detained and arrested on August 27, 2019.

WHEREFORE, ANDY HOPE WILLIAMS JR., seeks for judgment against Defendant, CITY OF AURORA, awarding compensatory damages and punitive damages in an amount in excess of seventy-five thousand dollars ($75,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**Count IX**
**(Fourteenth Amendment Claim for Declaratory and Injunctive Relief under 42 U.S.C. § 1983 Against Defendant Kristen Ziman)**

105. Paragraphs 1 through 104 are incorporated as though fully stated herein.

106. Count VII is alleged against Defendant Kristen Ziman in her official capacity.

107. The Aurora Police Department maintains a Gang Database consisting of the names and identifying information of individuals who are suspected to be members of street gangs.

108. The Defendant Officers falsely labeled Plaintiff as a member of an Aurora street gang and included his identifying information in the APD's Gang Database without justification.

109. Plaintiff was never notified by APD that he was in the Gang Database. APD never confronted him with evidence that he was gang-affiliated before including him in the Gang Database. There is no procedure by which Plaintiff can contest his inclusion in the Gang Database.

110. If APD had not included Plaintiff's name in the Gang Database, Plaintiff would not have been targeted and detained for an hour by the SOG.

111. The false information that Plaintiff is an Aurora street gang member will adversely affect his ability to not be discriminated against.

112. Plaintiff's liberty has been deprived based on false evidence used against him that he could not challenge.

113. By falsely labeling Plaintiff as an Aurora street gang member, including his name in the Gang Database, and then sharing his identifying information the APD violated Plaintiff's Fourteenth Amendment due process right.

114. The APD's dissemination of false information regarding Plaintiff's gang membership without the precaution of reasonable efforts to guarantee the accuracy of the information restricted Plaintiff's liberty without any procedural safeguards designed to prevent such inaccuracies in violation of his constitutional rights.

115. Plaintiff seeks injunctive and declaratory relief against Defendant Kristen Ziman in her official capacity to prevent the continued violation of his constitutional rights.

**Count X**
**Illinois Civil Rights Act of 2003, 740 ILCS 23/5**
**(State Law Claim Against City of Aurora)**

116. Paragraphs 1 through 115 are incorporated as though fully stated herein.

117. The City of Aurora is a "local government" subject to the Illinois Civil Rights Act of 2003 ("ICRA"), 740 ILCS 23/5.

118. The City's criteria and methods of administering police services in Aurora have the effect of subjecting individuals to discrimination because of their race, in violation of ICRA. Specifically, the City's criteria and methods of law enforcement and use of force have a discriminatory impact on black and Latino individuals.

119. As a direct and proximate result, Plaintiff has suffered injuries and is at continuous risk of being subjected to additional injuries and harm.

WHEREFORE, ANDY HOPE WILLIAMS JR., seeks for judgment against Defendant, CITY OF AURORA, awarding compensatory damages and punitive damages in an amount in excess of seventy-five thousand dollars ($75,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**Count XI**
**Intentional Infliction of Emotional Distress**
**(State Law Claim Against Defendant Officers)**

120. Paragraphs 1 through 104 are incorporated as though fully stated herein.

121. The individual Defendant Officers' conduct described above was extreme and outrageous. The Defendants' actions were rooted in an abuse of power or authority. Defendants intended to cause, or recklessly disregarded the probability that their conduct would cause, severe emotional distress to Plaintiffs.

122. Plaintiff suffered and continues to suffer emotional distress as a direct and proximate result of the individual Defendant Officers' actions.

123. Plaintiff is afraid to drive in Aurora and gets nervous every time he thinks he sees an undercover police car.

124. Plaintiff fears that the SOG and some police officers will retaliate against Plaintiff and start harassing him because he works in the community to end police brutality and discrimination.

125. Plaintiff continues to see the images of the police officers and remembers August 27, 2019 as the day he feared he was going to be shot during the discriminatory traffic stop.

WHEREFORE, ANDY HOPE WILLIAMS JR., seeks for judgment against Defendant, CITY OF AURORA, awarding compensatory damages and punitive damages in an amount in

excess of seventy-five thousand dollars ($75,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**COUNT XII – State Law Claim**
**Respondeat Superior**
**(State Law Claim Against City of Chicago)**

126. Paragraphs 1 through 125 are incorporated as though fully stated herein.

127. In committing the acts alleged in this Complaint, each of the individual Defendant Officers were members of, and agents of, the APD, acting at all relevant times within the scope of their employment.

128. Defendant City of Aurora is liable as principal for all torts in violation of state law committed by its agents.

WHEREFORE, ANDY HOPE WILLIAMS JR., seeks for judgment against Defendant, CITY OF AURORA, awarding compensatory damages and punitive damages in an amount in excess of seventy-five thousand dollars ($75,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

**COUNT XIII – Indemnification**
**(State Law Claim Against the City of Chicago)**

129. Paragraphs 1 through 128 are incorporated as though fully stated herein.

130. Illinois law provides that public entities are directed to pay ant tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

131. The APD Defendants are employees of Defendant City of Aurora who acted within the scope of their employment in committing the misconduct described above.

132. Defendants City of Aurora are thus liable under the theory of indemnification.

WHEREFORE, ANDY HOPE WILLIAMS JR., seeks for judgment against Defendant, CITY OF AURORA, awarding compensatory damages and punitive damages in an amount in excess of seventy-five thousand dollars ($75,000), attorney's fees, costs, plus interest, and any further relief this Court deems appropriate and just.

Dated: April 26, 2020

Respectfully submitted;

By:/s/ Andy Williams Jr.

Andy Hope Williams Jr.
P.O. Box 681
Westmont, IL 60559
630-479-7330
Hope5780@yahoo.com